This case to be called is Chang, et al. v. Ford v. the appellant Ian Cooper v. the appellee Sherry Rhoad. Is that right? No. Yes? Okay, I'm sorry. And we have 20 minutes, so whenever you're ready. Good morning. May it please the Court. Rhoad, my name is Ian Cooper. I represent Dr. Susan Ford in this matter. Dr. Ford is the interim provost at Southern Illinois University Carbondale. As interim provost, she's the chief academic officer for the institution in Carbondale, and of course, she's a state employee as well, and that's why we're here today. Dr. Ford, as the chief academic officer and interim provost, has the responsibility for administering the university's research misconduct policy, and it is that policy that is the center of the controversy and the dispute between the parties. In particular, this appeal involves the claim that Dr. Ford, in her capacity as provost at the state employees, inappropriately interpreted and incorrectly applied that university research misconduct policy with regard to the plaintiffs. The plaintiffs were the subject of a research misconduct claim by a student at the university, and Dr. Ford was required to administer the policy. The plaintiffs filed a lawsuit in circuit court asserting a claim for money damages under a tort theory against Dr. Ford. I filed on behalf of Dr. Ford a motion to dismiss that tort claim in circuit court and argued that the only venue, the only possible venue for such a claim would be the Illinois Court of Claims under the Lawsuit Community Act and the Illinois Court of Claims Act. The circuit court, Judge Bloodworth, denied my motion to dismiss, but after I prepared a request to certify the question, Judge Bloodworth agreed that the question should be certified to this court as to whether or not, in fact, the circuit court has jurisdiction over the tort claim for money damages against Dr. Ford. And so the circuit court certified the question of whether Dr. Ford is entitled to sovereign immunity from plaintiff's tort claim for money damages in circuit court pursuant to the Illinois Lawsuit Community Act and the Illinois Court of Claims Act, and it is that certified question that brings me before you today. Before I talk about the cases that are particularly important and I think dispositive of the appeal, I want to talk briefly about the research misconduct process policy and what it requires and what took place in this particular case. So, and actually the policy is attached to the plaintiff's second amended complaint, which is the pleading before the court that is of importance. However, that process has three phases. The first phase is called the initial assessment phase, and in that phase, the provost has the obligation to determine whether or not there is a colorful claim at all in research misconduct and whether it should proceed to phase two, which is called the inquiry phase. And in fact, in this case, Dr. Ford determined that there was reason and an appropriate basis to proceed from the initial assessment phase to the inquiry phase. And so what happens then is that an inquiry team is put together, three disinterested persons who have expertise in the matter, and then they make an inquiry into the particular issue and potential research misconduct and make an assessment at that point. And the inquiry team in this case did just that. They gathered information from the plaintiffs in this case, the faculty members who are plaintiffs in this case, they gathered information from other sources, and they came up with a recommendation. And it is the recommendation of the inquiry team that really is the center of the dispute here and the basis of the lawsuit. And this is at SR 121 in the record. This is the recommendation of the inquiry team. The inquiry team wrote, quote, the team believes that further investigation is warranted. And so the inquiry team makes a recommendation as to what should happen next. Should it stop there or should it go on to the final phase of the research misconduct investigation process, which is the investigation phase? And so, again, this is the key point. The inquiry team recommended, quote, believes that further investigation is warranted. That recommendation was given to Dr. Ford, the provost. She reviewed that, and in light of that recommendation, she determined that it was appropriate to move from the inquiry phase, phase two, to the final phase, phase three. Now, the plaintiffs sued in circuit court for money damages because Dr. Ford took that recommendation from the inquiry team and proceeded to phase three. That's the claim in this case, that a state employee interpreting and applying a state internal policy should be subjected to a tort claim for money damages because of the way she interpreted and implied a state policy and the way that she interpreted and applied the report and recommendation of the inquiry team. Now, we believe there could be no clearer example of a state employee acting within the course and scope of the state employee's state employment than this case. But how does a court decide whether or not a state employee is entitled to sovereign immunity? Of course, I'm not standing before you as the state in the sense of the Southern Illinois University as an entity. I'm standing before you as the lawyer representing Dr. Susan Ford. But this court is well aware that there are many, many cases that have held that state employees are equally entitled to sovereign immunity, just like entities, depending upon the nature of the claim involved, the nature of the issues involved, and the relief sought. So, in fact, the courts, and particularly the Supreme Court, have developed two separate tests for determining whether a state employee like Dr. Ford is entitled to sovereign immunity and may only be sued in the court of claims. The first test, the issues involved test, is also referred to as the source of duty test. And this is really where the rubber meets the road in this case because this test inquires and requires this court to determine the source of the duty owed by a state employee, here Dr. Ford, that was allegedly breached. That must be the focus of this court's inquiry. What was the source of Dr. Ford's duty to the plaintiffs in this case? And the Loman decision from 2008, the Jenkins v. Lee case 2004, the Curie v. Lau case in 1992, all those cases from the Illinois Supreme Court have recognized and applied this sort of source of duty test. In fact, the Loman v. Freeman decision in particular I commend to this court because it really lays out a road map for the inquiry that this court must engage in to determine what the source of the duty is with regard to the particular issues involved. So let's be clear. The duty that the plaintiffs claim that Dr. Ford breached was her duty to administer the research misconduct policy. At paragraph 44 of the Second Amendment complaint, the plaintiffs claimed that Dr. Ford was required by the policy to conclude the research misconduct process. And then at paragraphs 54 through 57, plaintiffs repeatedly claimed that Dr. Ford was mandated by the policy to conclude the research misconduct investigation process. So the duty that plaintiffs claim existed and that Dr. Ford was required to adhere to arose exclusively out of the research misconduct policy. And Dr. Ford's role as a state employee, her role as the provost, the person who it is undisputed was required to administer the research misconduct policy. So plaintiffs do not claim in this case, Your Honors, let's be clear, that Dr. Ford breached a duty to the plaintiffs outside of her obligations as provost, the person required to administer the research misconduct policy. So this case is not like, oh, a number of other fact patterns that have come before the court where, let's say, I believe it was the Lohman case that involved a veterinarian. And the claim was that the state employee defendant breached the duty of care as a vet. Well, that duty of care exists to all persons who come before that veterinarian and seek care. It's not like the Curie v. Lau case, which I believe was a case involving an officer who recklessly and negligently operated a motor vehicle. There's a duty, whether you're a state employee or not, of care to all persons when you're operating a motor vehicle. This case involves a situation where the duty arose exclusively out of Dr. Ford's state employment. She only owed a duty to other state employees to administer the policy. I mean, no citizen of Illinois other than a state employee is going to be subjected to a research misconduct investigation. And no one other than a state employee at the university who has the title of provost, that is the chief academic officer, is going to have a duty to administer the research misconduct policy. So the source of the duty test and analysis that is applicable to this case, under Lohman, Jenkins, and Curie, clearly requires the conclusion that Dr. Ford was entitled to sovereign immunity because the source of the duty that she owed was only through her state employment. Now, it's remarkable to me that my friend Ms. Rowe did not even address the source of the duty test in her brief. Now, I know Sherry as a terrific lawyer, and there's a reason for that, in my humble opinion, and that is because the source of the duty test so clearly favors Dr. Ford in this case and requires her to be of the order of the circuit court denying the motion to dismiss Dr. Ford. But in any event, the issue was not even addressed in the brief of plaintiffs. This case is actually quite a bit like the Supreme Court's decision in Healy v. Vaughan. And in that case, you might remember it involved a claim by a student against four state employees at a state university who were responsible for overseeing a gymnastics event. And the court concluded, applying the source of the duty test, that really their duty, the defendant's duty, only arose out of the fact that they were state employees, and it only arose out of the fact that the plaintiff was participating in a state-sponsored, university-sponsored activity. That was the only way that their duty arose and concluded, as a result, that the defendants were entitled to socratic unity and the claims could only be brought in the court of claims. So I think it's also important to note that even if this court were to believe that Dr. Ford erroneously failed to conclude the research misconduct investigation after Phase 2 and erroneously allowed the process to proceed to Phase 3, the investigation of Phase 3, well, lots of decisions from the Illinois Supreme Court have held that simply because a state employee erroneously applies a policy or erroneously discharges his or her state employment duties, that doesn't subject the employee to circuit court tort claims. All state employees are free to make mistakes. The question is, are they doing it within their obligations as a state employee, or because of duties they owe more broadly to persons outside of other state employees? Here, again, I know I'm beating a dead horse, but the only duty that was owed by Dr. Ford to the plaintiffs arose out of her state employment as the provost and the person in charge of the Research Misconduct Policy Administration. There's a second part of the test, which has to do with determining whether or not entering a judgment against Dr. Ford would have or could operate, I should say, not would, could operate to control the actions of the state who are subjected to liability. And this is from, again, the Lowman case and the Curie case. So this is test number two. In addition to the source of duty test, we also have the control test. Could a judgment against Dr. Ford, because of the way she administered the Research Misconduct Policy, operate to control the actions of the state who are subjected to liability? And again, we believe that there is no clearer example of the potential control of state actions than this particular case, where the plaintiffs are asking for a jury to enter in a war of money damages against a state employee for the way the state employee administered a state policy, interpreted and applied a state policy, and forced that to control the actions of the state. That would have profound implications as to how a provost would approach, interpret, and apply a state policy. So under the second test as well, we feel it equally clear that Dr. Ford must prevail, and she's entitled to sovereign immunity and to only be sued in a court of claims if anywhere at all. Let me talk briefly about the Lataro case as well, because I think part of the reason that we're here and where confusion arose in the trial court was the arguments relating to the applicability of the Supreme Court's Lataro decision. Lataro involved a case where a student at the University of Illinois claimed that he was improperly subjected to an investigation and discipline with regard to his academic and research activities. The key takeaway from Lataro, though, is, and the decision of the Supreme Court is, that that case did not involve a claim for money damages under a tort theory. Lataro only involved a claim for injunctive relief, and it was a 4-3 decision, and the majority of Lataro went to great lengths to say, hey, this is only a case involving a claim for injunctive relief. It is only a claim where the plaintiff is looking prospectively ahead. It is not a claim for money damages like the other cases, and it distinguished those other cases, and essentially the majority of Lataro adopted what is commonly referred to as, or applied what is commonly referred to as the officer's suit exception to sovereign immunity. The officer's suit exception allows claims for injunctive relief to be brought against state officers who have exceeded their authority and have engaged in conduct that they were not entitled to engage in. The officer's suit exception only permits, however, a circuit court to entertain claims for injunctive relief, prospective relief, looking forward. It does not, under any circumstance, permit claims for money damages under tort theories to be asserted against those state employees. So Lataro doesn't apply at all to this case because Lataro involved only claims for prospective injunctive relief, not a claim like this one, a tort claim for money damages against a state employee. So that's why Lataro has no application, and unfortunately the circuit court relied on Lataro in denying Dr. Ford's motion to dismiss and did so erroneously. Counsel? Yes. Does this Court's decision, Carson's-Wickham, have any... I'm glad you brought that up. I was going to get to that. I stood before you in the Carson's-Wickham case. That was my case. I argued it. And so I do have background and knowledge about what that case was about. And the short answer to your question is no. It doesn't have any impact on the disposition of this case for several reasons. First of all, Carson's-Wickham was a lawsuit for intentional infliction of emotional distress and defamation brought by a faculty member at the Edwardsville campus of SIU against a dean and another faculty member. In that case, the source of the duty, going back to that key test that this Court must look at in determining this appeal, the source of the duty that was owed by the defendants in that case, including my client, Dr. Alvaro Romero, it was determined by this Court to be the kind of duty that everyone owes to everyone else. It's a duty that employees, state employees and non-state employees, owe to everyone else, and that is to not defame or commit intentional infliction of emotional distress. The claims, in other words, the source of the duty that the defendant had in Carson's-Wickham did not arise solely out of the state employment of Dr. Romero. I wish that case had turned out differently. I disagree with the reasoning for other reasons in that case. But that was the holding of this Court. It's consistent fully, in other words, Your Honor, with the Lohman case, the Curie case, the Healy case, all those cases which have looked at what is the source of the duty of the state employee, and can we say that the source of the duty is owed generally to the public, or does it arise only because of the defendant's state employment, which is clearly the case here, Your Honor. Dr. Ford, again, had no duty owed outside of her state employment with regard to interpreting and applying the research misconduct policy at issue. So I have a couple more minutes and then I'll take the remainder for rebuttal, but Dr. Ford's an individual who was hired by the University to act as provost. She's a state employee with a state salary who every day of the week has to apply, interpret, enforce state policies. And to subject her, or for that matter, anyone else who's on the state payroll to a tort claim for money damages in circuit court because of the way they applied and interpreted an internal policy that they only had a duty to apply because of their state employment has vast consequences and implications for state employment. I'll reserve the remainder of my time for rebuttal.  Thank you. I'll have you wait just a moment. They say we're having technical difficulties. Okay. Use your watch. I'll use mine. Okay. If you want to just kind of give me a number and get me close. Sure. I'll let you know when you have five left. How's that? May I introduce the court? Mr. Cooper. Good morning, Your Honor. Your Honor. I am Sherry Roden. I represent Dr. Testan and Dr. Chang. It's interesting. And when I listen to Mr. Cooper, and he's right. We've known each other for a very long time, and he's a very good lawyer. But when he represented to the court what the question was that is certified to the court, he omitted the phrase at the end of the circuit court's decision or the recommendation to certify. He said, not only is, and let me read it specifically. Whether Dr. Ford is entitled to sovereign immunity from plaintiff's court claim, seeking money damages, filed in the circuit court, pursuant to the Illinois State Lawsuit and Community Act, when plaintiffs have alleged that Dr. Ford acted in excess of the express language of the university's policy, and that's which kind of injured the plaintiffs. And that's in the record at 168 and 169. Because here's the question. There's no doubt, and it's undisputed, that you can't sue the state itself for court of money damages or breach of contract except in the court of claims. It's not sufficient that Dr. Ford is a state employee on a state salary, and that automatically makes her the state for purposes of sovereign immunity. Sovereign immunity is an affirmative act, an affirmative defense, and she has to show she actually is the state. It's a one. The Latour case and the Stringham case have shown that. When it's the question of is an employee the state, then it's much more narrow. And it's why it's not simply sufficient, and I agree, that I mean for individuals. There are three things that have to be established in order for Dr. Ford to be the state for purposes of sovereign immunity. And it's been cited by this court last year in the Carson-Wick case, in paragraph four. And they said, and I quote, And actually it's the same. If there are three things, and I'm citing them right now, and these are conjunct, you have to have all three. One, no allegation that defendant employee acted beyond the scope of their, in this case, her authority. And we have that in our address at the moment. The second one is that the duty-alleged breach was not owed to the public generally and, and that's in the court's decision, actions complained of involved matters ordinarily within the employee's normal and official state function. All three of those things. And those things, if the defendant, Dr. Ford, doesn't have all three, like was the case in Carson-Wick, then the court says the plaintiff may proceed to circuit court without offending the principles of sovereign immunity. Now, in the complaint, the second amended complaint, in particular, count two, which is, or starting with the general facts, is the record at SR 100. And there are a variety of facts. In particular, it was pointed out that the research and misconduct policy, that's an issue that Mr. Cooper described, says that if the, at that second fact, if the inquiry team, and I quote, I'm sorry, the policy states that, quote, if an allegation is found to be unsupported but has been submitted in good faith, no further action, no further action, other than informing all parties involved in the inquiry, shall, in the words of the policy written by the board of trustees, be taken. And that's paragraph 43 in the second amended complaint. And then if you go back up to paragraph 41 in the second amended complaint, what the inquiry team found was the team's unsure, and I quote, the team is unsure whether the complaint qualifies as research misconduct. And they go on to explain why. And then in paragraph 42, they said they found there was evidence that the two faculty members were just not professional. Well, they didn't make the finding of there's some evidence of research misconduct. In fact, the inquiry team said, we don't even know what it is. Well, in fact, they don't know what it is, and they'll specifically say they found some evidence. They can't say they found some evidence of it. And therefore, under the policy's specific language, the policy granting the authority to Dr. Ford of what action she could take in her position as Provost said, it shall be completed. When she didn't conclude it, she was no longer acting under the authority granted to her by the board of trustees. She was acting in excess of the scope for approval. Counsel, what about Mr. Cooper's source of duty argument? How does that apply? He's interpreting the policy, and he said it erroneously applied. Well, and he says it repealed. But the same thing doesn't mean it's not a matter of just erroneously applying it. We all know the legal context of the word shack. It's not a discretionary, which is why in the brief I indicated that Dr. Ford's discretionary of putting the inquiry team where whatever she had done, right or wrong, would not have been the basis of this challenge. But when the board of trustees who gave her the authority said, you shall do this, and she fails to do it, she's no longer acting within the source of authority that the board of trustees gave her. It is not sufficient that simply she's the provost. If that were the case, then she could simply sign every document saying, I'm the provost, whether the board of trustees had given her any authority or not. But when the board of trustees said, here's your authority, and here's the restriction on that authority, it's no longer a question of, well, the board didn't give me the authority, but I'm going to do it anyhow. That's not an interpretation of the policy. That's not an erroneous exercise. It's simply disregarding the limitations on the authority that the state has given you. And that things are outside the authority that would make her arguably act as the state. In Latoura, and Mr. Cooper is correct, it was a case involving prospective relief. But it is incorrect in that there's not language in Latoura that is controlling or important for this court to pursue. And that takes us back to the question of, what does she have to prove? What does Dr. Ford have to at least present to show that she is the state for purposes of claiming this sovereign immunity? And in paragraph 46 of Latoura opinion, the Supreme Court said, when a state officer purports to act under authority which he does not have, the officer's conduct is not regarded as the conduct of the state, inciting back to the PHL 8 case versus Pullman Bank, a 2005 Supreme Court decision. And in paragraph 47 of Latoura, the Supreme Court said, the exception is aimed at situations where the official is not doing the business of the sovereign, which the sovereign has empowered him or her to do. That's the point here. The Board of Trustees, in essence, is the state. The Board of Trustees develop policy. They specifically state, here's the policy, here's your authority, and within the authority that we have given you, if we give you discretion, you exercise it, somebody disagrees, you're wrong, you misinterpret, you're still acting within the authority we gave you. But if we give you authority and it says, in this situation, you shall be tested, it's a limitation on the authority that you give. And so if you do something above and beyond that, you're no longer acting as a state. And in 45 of Latoura, Supreme Court said, sovereign immunity affords no protection, however, when it is sufficiently alleged that the state employee actually is in excess of his or her authority. In those cases where they act within the authority, the Court of Claims. Because the Court of Claims limits when and if you can sue the state. So unless the employee who is claiming the sovereign immunity can establish the three elements that this Court has recognized, and the Supreme Court has talked about since at least 1990 in the Healy versus Bothell case, then there's not a basis for granting sovereign immunity. And the state can't read, and you say state, and of course that's a university, because it's a state university, that's the state in this case. The state can't justifiably claim interference with its ability to function if it's going to complain, if the claim is about an act that was unauthorized. So I go back to the St. Park Nursing Home Center case at 104 Illinois 2nd, 169-188, the 1984 opinion. And there again, there's no protection according to this, to an agent of the state if they acted in excess of their authority in the second amendment complaint, thus containing inclusory language that says she acted outside the scope of her authority, but it also includes specific factual examples of how she did it. It's not just a general violation, so it is properly questioned. Now, if we take Mr. Cooper's argument to the extreme, as I said, if Dr. Ford says, you know, 24-7, I'm the provost, I'm the chief academic officer, I'm the state employee, I'm the state salary, and everything I do is for the state, there would be no exception, there would be no need for the Supreme Court to have set out the narrow standards where the state employee can claim sovereign immunity because it is arguably acting as the state. Dr. Ford, in her brief, claims that if this court rules against her, that it would eviscerate sovereign immunity. Not true. Sovereign immunity exists when she actually acts as the state. But to hold otherwise, that it can never not apply. If she is sued in anything related to the university, the exceptions created by the Supreme Court would never apply. The very fact or the sole fact that she is the provost and says, I act as the provost, is not all it takes. It takes the three elements that we've talked about. I want to address some of the things that Mr. Cooper indicated. A judgment against Dr. Ford would not control the university. The control of the university created its policies, it set the limitations on her authority, and therefore, as long as she acts within the authority granted to her, it's discretionary, but if it's restrictive, you still got to be acting within the scope of that authority, then that's all they've done. It would simply enforce the Board of Trustees' right to pay and to face limitations on its administrators. When she fundamentally disregarded, it's not just erroneous, the word child, I mean, she's very educated, she's a scholar, we all know child means this is what you do. If she didn't do it, she exceeded, disregarded the restriction of the Board of Trustees who granted her that authority under the research misconduct policy, and so I'm going to ammunity that case will not shield her. As I said, although Mr. Cooper wants to keep saying she misinterpreted or she erroneously applied, the language was clear and she simply disregarded it. Having disregarded it, it no longer protects her. The other thing I'd like to talk about is when Mr. Cooper said, well, the inquiry board, the inquiry team recommended that a further investigation was necessary. They can recommend all they want. If she didn't have the authority to take the action because they never made a finding regarding research misconduct, it doesn't give her the authority to simply ignore the restrictions the Board of Trustees placed upon her in that house. She can't just say, if the Board recommends this, that's what I got to do. Not the case. The Board made very clear restrictions on her authority, yet the inquiry team didn't make that necessary finding. And just like university officials in the Carstens case don't have the authority to disagree, they owe a duty to everybody not to defame them. Dr. Ford has an obligation to follow the restrictions of the policy placed upon her not to tortiously interfere with the rights of others if she doesn't have the authority to act in accordance with the Board's policy. If the Court has no further questions, then I thank you for that. Thank you. Your Honor, what I heard Ms. Rhodes say to you was similar to what she argued in her brief, and that is, all that any plaintiff needs to do in order to haul a state employee into circuit court, sue him for money damages, and avoid sovereign immunity, is say, exceeded his authority or exceeded her authority in her complaint. That's all. Because she says, she set that forth in her complaint, that's all she needs to do. That's a complete misreading of the cases from the Supreme Court. In fact, that was explicitly rejected by two decisions of the Illinois Supreme Court. And we talk about this pages 6 through 8 of our reply. In the Fritz case, the Supreme Court specifically held that the determination whether an action against a state employee ought to be characterized as an action against the state does not depend simply upon whether the employee was acted within the scope of his employment when he committed the act in question. Rather, the applicability of sovereign immunity turns on the source of the duty with the breach of which the employee is charged. Remember, Fritz was a tort case as well. And then, in a case cited by Ms. Rhodes in her brief, Smith v. Jones, I'm not kidding, there's actually a case called Smith v. Jones. In Smith v. Jones, the Illinois Supreme Court said that it was insufficient to simply plead that the state defendant exceeded his authority. In that case, the defendant was the director of the Illinois State Lottery who was sued for breach of contract. And the complaint that the plaintiff filed specifically stated, quote, the director exceeded his authority by breaching a contract, end quote. The Supreme Court rejected the idea that it's simply enough to say that. So it's not about a plea. It's not about what's set forth in a plea. Obviously, any artful and creative and talented plaintiff's lawyer can say the magic words, exceeded his or her authority. It's what's the source of the duty. And would a judgment control the actions of the state? And on both of those tests, Dr. Ford's entitled to sovereign immunity. And if we're going to get in the weeds at all on the issue of what Dr. Ford did in this case with regard to her application and interpretation of the research misconduct policy, well then, let's at least be fair about it. Because it is not fair to say that Dr. Ford was required to end the proceeding at the inquiry team phase. Because, as I pointed out in my opening remarks, the inquiry team itself made the recommendation based upon their review of the evidence, their interviews, and their review of the documents, quote, the team believes that further investigation is warranted. Well, what does the state, what does the provost have to do with that? Simply ignore it. And actually, my friend Ms. Roe made a relatively significant admission in her argument. She said that the inquiry team didn't know whether there was research misconduct or not, didn't reach a conclusion. Well then, if we look back at the policy that she claims mandated shutting down the research misconduct investigation, it says, quote, if an allegation is found to be unsupportive, there was no such finding by the inquiry team that research, that the allegation was found to be unsupportive. There was no finding. What they said was, we're unclear as to what this means. Further investigation is warranted. So by a strict interpretation of the very policy that she claims mandated Dr. Ford to act in a certain way, it doesn't support her argument. The bottom line is this, that state employees, as I said, make interpretations and apply policies every day, whether it's employment, tenure issues, student investigations, a whole range of issues. And policies have to be interpreted and applied. And state employees do so in good faith as best they can. And sometimes they get it right, sometimes they get it wrong. And when they get it wrong, that doesn't entitle the agreed student or parent or faculty member or staff member to haul them into court and claim, under a tort theory, a claim for money damages. It's possible that you can go to the court of claims and make such a claim. And it's also possible under Littaro, under certain circumstances, you can request prospective injunctive relief, which is not what plaintiffs seek in this case. What they seek is money damages. And for those reasons, we ask that this court reverse the judgment and order of the circuit court denying the motion to dismiss and hold that Dr. Ford is entitled to sovereign immunity and that claims, if any, may only be brought, if at all, in the court of claims against Dr. Ford under a tort theory for money damages. Unless there are questions, I thank the court very much. Thank you. Thank you. Thank you. Thank you.